```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

WEIGHT LOSS SERVICES, LP,         :      CIVIL ACTION
et al.                            :
                                  :
         v.                       :
                                  :
HERBAL MAGIC, INC., et al.        :      NO. 11-3859

MEMORANDUM

McLaughlin, J.                                September 22, 2011

      The plaintiffs in this action are Weight Loss Services, LP ("Weight Loss Services"), NU Services, LP; LATYD, LP; LA My Way, LP; LATYDCA, LP; WLS IP, LLC; LAIP, LLC (collectively, the "entity plaintiffs"); William Warrin, Timothy Britt, and Kristi McKenna ("individual plaintiffs").  The plaintiffs filed their Complaint on May 24, 2011, in the Court of Common Pleas of Philadelphia County against Herbal Magic, Inc. ("Herbal"), and LA Weight Loss, LLC,[1] following the sale of their weight-loss business.  The plaintiffs brought claims for breach of contract and breach of the individual plaintiffs' employment contracts, and sought a declaratory judgment interpreting the terms of the Asset Purchase Agreement ("APA") underlying the sale.  The defendants removed the action to this Court on June 13, 2011 on the basis of diversity.

      Before the Court are two motions: (1) the defendants'

---

[1] LA Weight Loss, LLC is formerly known as Nutri Magic, LLC.

Motion Under Fed. R. Civ. P. 12(b)(6) and/or 12(b)(3) to Dismiss, or in the Alternative, to Transfer Venue ("Defs.' Mot."), filed June 15, 2011; and (2) the plaintiffs' Motion to Amend the Complaint ("Pls.' Mot."), filed August 1, 2011.  The Court will grant the motion to amend the complaint, deny the motion to dismiss, and grant the motion to transfer the case under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York.

I.   Facts

The entity plaintiffs are Pennsylvania limited partnerships, a Pennsylvania limited liability company, and a Delaware limited liability company with their principal places of business located in a number of towns in eastern Pennsylvania.[2]  Mr. Warrin and Mr. Britt reside in Pennsylvania and Ms. McKenna resides in New Jersey.  The defendant Herbal Magic, Inc. is a Canadian corporation with its principal place of business located in Toronto, Ontario, and the defendant LA Weight Loss, LLC is a Delaware limited liability company with Herbal as its only member.[3]  Compl. ¶¶ 3-16; Declaration of Craig Thompson, Ex. 2 to

---

[2] For diversity purposes, the citizenship of the limited partnerships and limited liability companies is the same as each of their partners or members (in the case of the entity plaintiffs, Pennsylvania and New Jersey).  Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419-20 (3d Cir. 2010).

[3] Similarly, LA Weight Loss, LLC, is an alien for purposes of diversity and venue, as its only member is a Canadian entity.

Defs.' Mot. ("Thompson Decl.") ¶¶ 2-3.

In early 2010, the defendants contacted the plaintiffs expressing their interest in purchasing their weight-loss business, LA Weight Loss.  Throughout 2010, the plaintiffs and defendants negotiated a potential deal.  Representatives from Herbal traveled to Philadelphia on numerous occasions to discuss the terms of the agreement, including provisions for the individual plaintiffs to continue operating the "Company Group" after the sale of the business.[4]  The defendants conducted two rounds of due diligence on the deal and negotiations were completed on December 10, 2010.  The parties executed the APA on that date.  Compl. ¶¶ 29-45.

The APA contains two provisions that are relevant to the instant dispute:

> 13.6 <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the Laws of the State of New York.
>
> 13.7 <u>Consent to Jurisdiction and Venue</u> . . . .
>      (a)  Each party hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the courts of the United States of America located in the Southern District of New York and venue in

---

Id.

[4] The "Company Group" includes entity plaintiffs Weight Loss Services, LP, NU Services, LP, LATYD, LP, LA My Way, LP, LATYDCA, LP, WLSIP, LLC, and LAIP, LLC.  Compl. ¶ 10.  It appears that all of the entity plaintiffs are business associations composed of the individual plaintiffs.

-3-

> Manhattan, New York County, New York, for any
> actions, suits or proceedings arising out of
> or relating to this Agreement.

APA, Compl. Ex. A at 55. The individual plaintiffs also executed Employment Agreements with the defendants that contained similar choice-of-law and forum-selection clauses. Employment Agreement §§ 13-14, Compl. Exs. B, C, D. The Employment Agreements provided that the individual plaintiffs would be employees of LA Weight Loss, LLC for a term of three years after the transaction closed and would be compensated at a rate of $250,000 annually, plus benefits. The individual plaintiffs were terminated on May 4, 2011, putatively for cause. Compl. ¶¶ 51-53, 63-64.

After the action was removed to this Court, the plaintiffs made demand on the defendants for severance payments and the value of their accrued but unused vacation days, which the defendants refused. The plaintiffs then filed their instant motion seeking leave to amend their complaint to add a claim for these amounts and liquidated damages under the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Cons. Stat. § 260.1 et seq. The defendants refused their consent to filing a second amended complaint. Pls.' Mem. in Support of Mot. to Amend 1-3.

## II.  Analysis

The parties have agreed to rest on their briefs regarding the defendants' motion whether or not the Court grants the plaintiffs' motion; accordingly, the Court will address the

plaintiffs' motion first.

A.   The Plaintiffs' Motion

Where a party already has amended a pleading once, that party may amend it "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The plaintiffs argue that granting their Motion to Amend before ruling on the defendants' motion "will create no delay or additional work for the Court or the parties," and that when discussing a potential stipulation to amend the complaint, "the parties contemplated that if the Motion to Amend were granted, they would simply rest upon the briefs they had already filed concerning the Motion to Dismiss, except insofar as Plaintiffs believe that the proposed Amendment affects the [governing law] in its favor, and Defendant does not."

The Court agrees.  Pursuant to the liberal standard set forth in Rule 15(a)(2), the Court will grant the Motion to Amend.  The Court thus treats the defendant's motion as if it were directed at the plaintiff's proposed amended complaint, which adds claims under the PWPCL under largely the same operative facts as the first amended complaint.  The Court turns to the defendants' motion.

B.  <u>The Defendants' Motion: Preliminary Matters</u>

Because the defendants move in the alternative for dismissal under Rule 12 and transfer under 28 U.S.C. § 1404(a), the Court must determine as a threshold matter the appropriate procedural vehicle for addressing the defendants' motion.  In <u>Salovaara v. Jackson National Life Insurance Co.</u>, the United States Court of Appeals for the Third Circuit addressed the appropriate procedure for enforcing a forum selection clause.  246 F.3d 289, 297-99 (3d Cir. 2001) (per curiam).  In <u>Salovaara</u>, the Court of Appeals held that a district court may enforce such a clause through dismissal or transfer, but where a forum selection clause permits an action to be brought in a federal forum,

> it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss.  And if a defendant moves under § 1404(a), transfer, of course, is the proper vehicle (assuming the reasonableness of the forum selection clause).

<u>Id.</u> at 298; <u>accord</u> 14D Charles Alan Wright, Arthur R. Miller & Edwin H. Cooper, <u>Federal Practice and Procedure</u> § 3803.1 (3d ed. 2007).  The forum selection clauses in the Employment Agreements and APA permit transfer to another federal forum, and so under <u>Salovaara</u> transfer is preferable to dismissal.  The Court thus treats the defendants' motion as one for transfer under Section 1404(a).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Still, "transfer, as distinct from dismissal, is permissible only when venue is proper in both the original and the requested forum."  <u>Knights Collision Ctr., LLC v. AAA Mid-Atlantic, Inc.</u>, No. 09-493, 2010 WL 1141334, at *2 (E.D. Pa. Mar. 25, 2010) (citing <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 878 (3d Cir. 1995)).  The parties concede that the defendants are Canadian citizens for purposes of jurisdiction and venue.  An alien may be sued in any district.  28 U.S.C. § 1391(d).  Thus, venue is proper in both the Eastern District of Pennsylvania and the Southern District of New York.

    C.   <u>Enforceability of the Forum Selection Clause</u>

The initial burden of demonstrating the need for transfer is on the defendant, and the plaintiff's choice of venue should not be lightly disturbed.  The presence of a forum selection clause, however, shifts the burden to the plaintiff, who "bears the burden of demonstrating why they should not be bound by their contractual choice of forum."  <u>Jumara</u>, 55 F.3d at 879-80.  Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," which requires a "strong showing" by the plaintiff.  <u>M/S Bremen v.</u>

Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972).  Enforcing a forum selection clause is unreasonable where the clause has been procured by "fraud or overreaching," or if the resisting party shows that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  Id. at 15, 18.  The plaintiffs do not contend that either the APA or the Employment Agreements were obtained through fraud or overreaching, nor do they argue that they would be deprived of their day in court if the case were transferred.  The Court finds that the forum selection clauses in the Employment Agreements and APA are enforceable.

    D.    Section 1404(a) Balancing Test

The Jumara court added a number of factors that a district court should consider when deciding a motion to transfer, elaborating on the Section 1404(a) standard which permits transfer "for the convenience of parties and witnesses" and "in the interest of justice."  These factors are divided into private and public interests.  The private interests include:

> plaintiff's forum preference as manifested in
> the original choice; the defendant's
> preference; whether the claim arose
> elsewhere; the convenience of the parties as
> indicated by their relative physical and
> financial condition; the convenience of the
> witnesses--but only to the extent that the
> witnesses may actually be unavailable for
> trial in one of the fora; and the location of

>    the books and records (similarly limited to
>    the extent that the files could not be
>    produced in the alternative forum).

Jumara, 55 F.3d at 879.  The public interests include:

>    the enforceability of the judgment; practical
>    considerations that could make the trial
>    easy, expeditious, or inexpensive; the
>    relative administrative difficulty in the two
>    fora resulting from court congestion; the
>    local interest in deciding local
>    controversies at home; the public policies of
>    the fora; and the familiarity of the trial
>    judge with the applicable state law in
>    diversity cases.

Id. at 879-80.

A forum selection clause represents the preferences of the parties as to a convenient forum, and "[a]lthough the parties' agreement should not receive dispositive weight, it is entitled to substantial consideration."  Id. (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-31 (1988)).  Indeed, a forum selection clause is "a significant factor that figures centrally" in the Court's analysis under Section 1404(a), Stewart, 487 U.S. at 29.  Still, the statute demands an "individualized, case-by-case consideration of convenience and fairness."  Van Dusen v. Barrack, 376 U.S. 612, 622 (1964).  The court thus turns to the multifactor test set forth in Jumara, keeping in mind the central role of the valid forum selection clause.

1.  Private Interests

Although the plaintiffs filed the action in the Court of Common Pleas of Philadelphia County, this choice is not entitled to the deference ordinarily afforded it because a forum selection clause is present, reflecting the plaintiffs' contractual choice.  Jumara, 55 F.3d at 880 (citing In re Ricoh, 870 F.2d 570, 573 (11th Cir. 1989) (remand of Stewart)).  The defendants have demonstrated their preference for the Southern District of New York through their execution of the forum selection clauses and their instant motion to transfer.  The plaintiffs repeatedly emphasize that most of the events giving rise to their claims occurred in Philadelphia, although some did occur abroad, and thus this factor weighs only marginally against transfer.

The plaintiffs have not averred that their physical or financial condition precludes them from litigating the matter in the Southern District of New York.  Further, the plain language of the transfer statute requires the Court to consider the convenience of all parties, not simply the party resisting the motion to transfer.  Although the plaintiffs are located in the Philadelphia area, the defendants are located in Ontario, Canada.  The Southern District of New York and Eastern District of Pennsylvania are roughly 100 miles apart, and thus the difference in convenience between the fora is negligible.

With respect to the final two private factors, the Court is precluded from considering them on the instant motion because the plaintiff concedes that neither witnesses nor books and records would be unavailable if the case were litigated in the Southern District of New York. The Court finds that the private interests are at least neutral and likely weigh in favor of transfer.

2.  Public Interests

The public factors relating to enforceability, administrability, and practicality do not weigh heavily in either direction in this case. The District Court for the Southern District of New York is no less capable than this Court in handling commercial disputes efficiently.

The plaintiffs argue that local interests militate in favor of the Court hearing their "local controversy" and denying the motion to transfer. Pls.' Oppn. to Defs'. Mot. to Dismiss or Transfer ("Pls.' Oppn.") 9. The Court acknowledges Pennsylvania's strong interest in providing a forum for its citizens to litigate their disputes. See, e.g., Elbeco, Inc. v. Estrella de Plato Corp., 989 F. Supp. 669, 678 (E.D. Pa. 1997). Still, the Court is reluctant to characterize this case, with amounts in controversy well in excess of a million dollars, as purely local. By the plaintiffs' own admission, the business at the heart of the dispute is "one of the best-known and

-11-

historically most successful weight loss programs in the Americas," and includes "over 800 retail diet stores that were either corporately owned and operated or operated through franchisees throughout the United States, Canada and Costa Rica." Compl. ¶ 21  The individual plaintiffs, at least for a time, were involved in marketing efforts and correspondence with these franchisees.  Id. ¶¶ 55-57.  This controversy thus has a broader scope than the case the plaintiff cites on this point in opposition to the defendants' motion.  See Pls.' Oppn. 9 (citing Banket v. GC America, Inc., No. 05-576, 2005 WL 2600204, at *6 (E.D. Pa. Oct. 11, 2005) (refusing to transfer an Age Discrimination in Employment Act case)).

Similarly, the plaintiffs argue that the addition of claims under the PWPCL in their Amended Complaint renders the Court's familiarity with Pennsylvania law a factor favoring retention of the case.  Assuming that this is so, the fact that the parties have actively selected New York law to govern the APA and Employment Agreements weighs equally if not overwhelmingly in favor of transfer.

Further, the public policy of New York permits parties to subject their disputes to their jurisdiction in choice-of-law as well as forum-selection matters.  See N.Y. Gen. Oblig. Law §§ 5-1401, 5-1402 (permitting choice of New York law in contracts "whether or not such contract . . . bears a reasonable relation

to this state" and allowing forum selection clauses where New York law governs). The courts of the Southern District of New York are more familiar with the New York state law that governs the bulk of this dispute. The Court therefore concludes that the public interests are at least neutral with respect to transfer, and probably weigh in favor of it.

   The existence of a valid forum selection clause imposes upon the plaintiff the burden of demonstrating why it should not be enforced. The Court finds that the plaintiff has not made the strong showing required to meet that burden. The Court will transfer the case to the United States District Court for the Southern District of New York.

   A separate order follows.